## REDINGER *v.* CRESPO.

APELACIÓN procedente de la Corte de Distrito de Arecibo.

No. 756.—Resuelto en marzo 8, 1912.

DAÑOS Y PERJUICIOS—ANIMALES—RESPONSABILIDAD DEL DUEÑO—MAYORDOMO.— Interpretando las disposiciones de los artículos 1804 y 1806 del Código Civil a la luz de los principios y de la jurisprudencia, es indudable que el dueño de animales es responsable de los daños y perjuicios que ocasionen penetrando en propiedades ajenas, sin que desvirtúe para nada esa responsabilidad el hecho de que dichos animales estaban al cuidado y bajo la dirección del mayordomo de la finca, sin perjuicio de la responsabilidad que pueda tocar al mayordomo por tales daños.

ID.—POSESIÓN DE LOS ANIMALES—POSESIÓN CIVIL Y NATURAL.— Aun en el caso de que sólo fuera responsable la persona en cuya posesión se hallan los animales que han causado el daño, no por eso dejaría de ser responsable el dueño de los mismos, por el hecho de ser el mayordomo de su finca el que los cuida y vigila, pues la posesión que éste tiene no es por derecho propio sino a nombre de su principal.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Antonio Suliveres.*

Abogados del apelado: *Sres. Ricardo Agrait Aldea y José Martínez Dávila.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

Esta apelación tiene su origen en una acción que estableció Camden Redinger contra Francisco Crespo para que se le indemnizaran los daños y perjuicios que alegó había sufrido en su finca por la depredación de animales cabríos y bueyes del demandado, que le destruyeron cuarenta árboles de chinas y otros daños ascendentes todos a quinientos cincuenta pesos ($550). En el juicio las partes presentaron sus respectivas pruebas, y se dictó sentencia en la que se declaró que la demanda estaba bien fundada, habiéndose justificado los daños y perjuicios en la suma de $400, y ordenando que el demandante recobre del demandado la expresada suma y las costas.

Contra esta sentencia interpuso el demandado recurso de apelación para ante este tribunal que se encuentra pendiente

de resolución, después de oirse los informes orales y escritos que oportunamente formularon ambas partes. Los hechos son en resumen, que el demandante y demandado eran dueños de fincas contiguas en la municipalidad de Vega Baja, y el demandado poseía ganado y cabras que se cuidaban en su finca y los atendía su mayordomo. Se ha alegado y probado que en los meses de marzo y abril del año pasado, los animales pertenecientes al demandado penetraron en la finca del demandante, destruyendo cuarenta árboles de chinas. El demandado alega como defensa, que con arreglo a los estatutos de Puerto Rico, a saber: el Código Civil, artículos 1804 y 1806, es solamente la persona en cuyo poder se encuentran los animales, la responsable de los daños causados por ellos al penetrar en la finca de otro. En lo que pueden ser aplicables dichos artículos a este caso, se expresan como sigue:

"Artículo 1804.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propias, sino por los de aquellas personas de quienes se deba responder * * *.

"Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en los que tuvieran empleados, o con ocasión de sus funciones * * *.

"La responsabilidad de que trata este artículo cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño.

"Artículo 1806.—El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe.

"Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido."

Al dictar su sentencia el Juez de Distrito del Distrito de Arecibo, la fundó en una resolución que es innecesario copiar aquí.

Todo el caso se funda virtualmente en un solo punto, a saber: ¿quién es responsable de los daños y perjuicios, el dueño de los animales o el mayordomo de la finca que, realmente tiene a su cuidado dichos animales? De un examen de

las autoridades se ve que los principios de la ley española y americana son casi idénticos en cuanto a la responsabilidad del dueño en tales casos. El célebre comentarista Manresa refiriéndose a esta cuestión se expresa como sigue:

"Por la misma razón, aquel que por su industria, por su profesión o por otras circunstancias, tuviere alguna otra persona a su servicio o bajo su dependencia o custodia, debe exigir de ella que cumpla su cometido con la actividad y diligencia necesarias; y si por faltar a éstas diere origen a un perjuicio, deben venir obligados a indemnizar al perjudicado aquel que tuviera a su servicio o bajo su vigilancia al que causó el daño, ya por no haber tenido el debido celo en la inspección en los actos de sus dependientes o subordinados, ya porque careciendo éstos, por regla general, de los medios de indemnizar personalmente, no es justo que el que sufre un daño por causa de otro se vea privado de acción suficientemente eficaz para reclamar su reparación. (12 Comentarios de Manresa, págs. 608 y 609.)

"La responsabilidad impuesta por el artículo 1903 a los que deben responder por otras personas, no es subsidiaria ·sino directa, como lo exige la causa que la motivó; y la establece la ley por razón del incumplimiento de los deberes que imponen las relaciones especiales de autoridad o superioridad que median entre el que ha de reparar el daño y el que dió motivo a él con sus actos u omisiones." (12 Comentarios de Manresa, págs. 611 y 612.)

El mismo comentarista continúa como sigue:

"De aquí que en vista de esa imposibilidad se suponga que aquel que posee o usa un animal por una razón de necesidad, o para su comodidad o recreo, se somete desde luego, por el mero hecho de su posesión o uso a todas las eventuales consecuencias y a todos los daños ulteriores que pudieran sobrevenir, aceptando asimismo implícitamente por· virtud de ese hecho la responsabilidad consiguiente, lo cual presupone la existencia de un consentimiento presunto o de un consentimiento tácito, por parte del poseedor, o usuario del animal, que ocasionó el daño, con la obligación de responder del mismo. De este modo suponen que debe entenderse en las acciones noxales la máxima por algunos combatida: '*Cujus commoda ejus incommoda, nam commoda et incommoda inter se reciprocantur;*' pues aun cuando el daño no puede calificarse *stricto jure* como una secuela directa de la propiedad o del uso, es siempre su consecuencia indi-

recta y mediata, la cual debe explicarse por el principio *causa causae est causa causati,* cuando quiera determinarse la razón de la responsabilidad.'' (12 Comentarios de Manresa, págs. 621 y 622.)

Sigue expresándose el propio comentarista en las páginas que siguen, de este modo:

"El espíritu del artículo 1905 es bien perceptible, y explícito resulta de los propios términos del mismo. Castígase en él la culpa o negligencia del que, pudiendo y debiendo evitar las consecuencias del uso o empleo de los animales, no lo evita por no adoptar los medios de previsión convenientes y adecuados a dicho fin, o porque, aun adoptándolos, no pudo conseguirse dicho resultado, por deber imputarse a sí mismo el riesgo que puede sobrevenir de utilizarlos, toda vez que al valerse de ellos, acepta voluntariamente por ese hecho la responsabilidad de las consecuencias que puedan derivarse de él. En su virtud, siempre que el daño que se produzca sea una consecuencia propia y natural de la utilización del animal damnificador, independiente de toda intervención extraña o de cualquiera otra causa no imputable al poseedor o al que hace uso de él, deben éstos soportar dicha consecuencia reparando el daño causado, hubiera o no negligencia o falta de cuidado, porque al tener en su poder dicho animal, o al usarle, ya sabían a lo que podían exponerse.'' (12 Comentarios de Manresa, págs. 626 y 627.)

Las autoridades americanas se expresan virtualmente en igual sentido general. Las encontramos compendiadas en el tomo 2 de Cyc., páginas 378-379, a saber:

"PARTES RESPONSABLES.

"(I) *Dueño o encargado.*—Contra nadie puede ejercitarse una acción por los daños y perjuicios causados por un animal que no le pertenece, atiende o dirige; pero una persona que cuida, atiende, o está encargada de animales viciosos es responsable por los perjuicios que ocasionen, sin que sea necesaria tener en cuenta la pertenencia de los mismos, y aun cuando tal cuidado sea sin consentimiento y contra el deseo del dueño del animal.

"(II) *Quien es dueño o encargado.*—Atender, quiere decir proteger, y el que acaricia a un perro como si lo tuviere en su casa, y se toma el trabajo de hacer que le obedezca dirigiendo sus movimientos es el dueño o encargado, según el significado de la ley; pero el hecho de que se encuentre fortuitamente un animal en su finca, si no se

le trata como se ha dicho, no convierte a tal persona en dueño, o persona encargado del mismo. Si el jefe de una casa de familia, que está en posesión y dominio de una casa o finca, deja o permite que se cuide un animal en su finca de tal modo, puede considerársele como encargado de dicho animal, ya pertenezca el mismo a su hijo o a su esposa; y si una mujer casada tiene todos los derechos de una soltera, *feme sole,* en lo que se refiere a sus bienes propios, puede ser responsable como encargada de un animal, aunque en realidad pertenezca a su marido, no siendo esto necesariamente así. Igualmente una corporación o sus oficiales, un huésped, o un barco, pueden estar sujetos a responsabilidad. La persona que a sabiendas permite que se cuide un perro en su finca, por un empleado o sirviente, es un encargado según el alcance del estatuto; pero no sucede lo mismo, cuando el empleado vive en otra casa en la finca del patrono. El hecho de que otras personas excepto el demandado habían intervenido en el cuido de un animal no lo exime de ser considerado como la persona a cuyo cuidado está el animal dentro del significado del estatuto." (2 Cyc., 378, 379 y casos citados.)

La Ley, según ha sido enunciada tanto por las autoridades españolas como por las americanas, claramente hace responsable lo mismo al dueño, que al encargado de animales realengos, de los daños y perjuicios que ocasionen penetrando en propiedades ajenas; y no importa si las cabras o animales que causaron el daño se encontraban realmente al cuidado o custodia de su dueño, o bajo la dirección del mayordomo de la finca. En uno y otro caso él es responsable, el dueño, según se ve claramente de las autoridades citadas; pero aun cuando el caso fuera como alega el apelante, o sea, que sólo la persona en cuya posesión puedan hallarse los animales, sería la responsable, es claro, sin embargo, que el demandado tenía suficiente posesión de los animales para establecer su responsabilidad. La posesión, según el Código Civil de Puerto Rico, se define en los artículos 433 y 434, como sigue:

"Artículo 433.—Posesión natural es la tenencia de una cosa o el disfrute de un derecho por una persona. Posesión civil es esa misma tenencia o disfrute, unidos a la intención de haber la cosa o derecho como suyos.

"Artículo 434.—La posesión se ejerce en las cosas o en los de-

rechos por la misma persona que los tiene y los disfruta, o por otra en su nombre.''

Puede ser que el dueño no tuviera el dominio directo y la posesión real o natural de los animales en su propia persona, pero él ciertamente los poseía por medio de su agente, según se expresa en el artículo 434. Por consiguiente, interpretándose correctamente nuestro Código Civil, se resolvió que la posesión de los animales la tenía el dueño de los mismos. Esta es también la ley en el continente americano, según se ha expresado en un caso de California que sirve de norma. El Juez Asociado, Sr. Bennett, al emitir la opinión del tribunal en aquel caso, se expresó como sigue:

"Los anteriores preceptos de la ley española y mejicana no se diferencian esencialmente de los de la ley francesa. Es necesario, dice Domat, distinguir un derecho y un hecho en la idea general que se tiene de la palabra posesión; el derecho a poseer, y la tenencia real, que es el hecho. (1 Domat, Lib. 3, Tít., 7.) Considerada la posesión en su verdadero sentido, es la tenencia de una cosa que su dueño, o el que tiene motivos razonables para creer que lo es, tiene a su cuidado, o en el de otra persona que lo representa en la posesión. (Id. 469, Lib. 3, Tít. 7, Sec. 1, art. 1.) Expresa además dicho juez, que la posesión supone un derecho y un hecho; el derecho a gozar en unión del derecho de propiedad, y el hecho de la verdadera tenencia de la cosa, que puede estar en poder del dueño o de otro que lo sustituya. (Id. Lib. 3, Tít. 7, Sec. 1, art. 2.) Además, una persona puede poseer cosas corpóreas, ya sean movientes o semovientes, pero según sus distintas naturalezas, la manera de poseerlas es distinta. Así una persona puede poseer bienes muebles, teniéndolos guardados bajo llave, o en cualquiera otra forma a su disposición. Por ejemplo, una persona posee ganado, ya teniéndolo en su finca, o dándolo a otro para que lo cuide; se posee una casa habitándola, dejándola al arrendatario, o haciendo construcciones en ella. Uno posee terrenos, cultivándolos, recogiendo el cosecho, saliendo para dichos terrenos y regresando de ellos, y disponiendo libremente de los mismos. Sin embargo, aun cuando la posesión signifique la tenencia de lo que poseemos, esta tenencia no debe considerarse como si fuera necesario que siempre tuviéramos en nuestras manos o ante nuestra vista, las cosas que poseemos. Pero una vez adquirida la

posesión se sigue en ella sin que sea necesaria la tenencia real de la misma." (*Suñol* v. *Hepburn,* 1 Cal., 263-264.)

De acuerdo con las autoridades que han sido citadas y otras más que pudieran citarse en gran número, somos de opinión que la sentencia de la corte inferior es enteramente correcta, no habiendo motivos para modificarla. Debe, por tanto, confirmarse.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.